IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARILYN M. SLONIKER,

                Plaintiff,                OPINION AND ORDER

v.

                                             12 cv-510-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

---

In this *pro se* action brought pursuant to 42 U.S.C. § 405(g), plaintiff Marilyn M. Sloniker seeks judicial review of an adverse decision by the Commissioner of Social Security, which found that she was ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d), and Supplemental Security Income benefits under Title XVI of the Act, codified at 42 U.S.C. §§ 1381(a) and 1382(a). Sloniker contends that the ALJ erred on several related grounds, but because there is substantial evidence in the record to support the decision, and no reversible error, the court will affirm the Commissioner's decision and dismiss the case.

### FACTS[1]

### I.    Background

Sloniker applied for Disability Insurance Benefits (DIB) in January 2010, alleging an onset date of August 18, 2009. (AR 283-84.) The Agency denied her application both initially and on reconsideration. (AR 202-05, 208-11.) Sloniker then requested a

---

[1] The following facts are drawn from the administrative record (AR).

hearing. (AR 212). On May 19, 2011, she appeared and testified before Administrative Law Judge John H. Pleuss ("ALJ"). (AR 88-137). A vocational expert, Catherine A. Anderson, also testified. On July 26, 2011, the ALJ determined that Sloniker was not disabled because she could perform a significant number of sedentary jobs. (AR 180-92.)

Sloniker subsequently requested Appeals Council review of the ALJ's decision. On October 21, 2011, the Appeals Council granted her request for review, vacated the hearing decision, and returned the case to the ALJ so that he could:

> 1. Obtain additional evidence concerning Sloniker's depression in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence.
>
> 2. Evaluate Sloniker's mental impairments by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1 520a(c).
>
> 3. Give further consideration to the Sloniker's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.
>
> 4. Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

(AR 199-200.)

Pursuant to the remand order, Sloniker appeared and testified again before ALJ Pleuss on March 20, 2012. (AR 138–69.) Jacqueline Wenkman testified as a vocational expert at this hearing. (AR 169-74.) On March 28, 2012, the ALJ again determined that Sloniker was not disabled because she could perform a significant number of sedentary jobs. (AR 9- 24.) Sloniker requested Appeals Council review, which was declined on

May 21, 2012. Thus, the ALJ's decision became the final decision of the Commissioner. (AR. 1-5.) On July 18, 2012, Sloniker sought judicial review in this court pursuant to 42 U.S.C. § 405(g).

## II.     Sloniker's Testimony

Sloniker identified herself as a younger individual who had completed a Master's Degree in biblical studies. (AR 142.) In support of her application for benefits, Sloniker explained that she had bipolar disorder, diabetes, high blood pressure, and a hemangioma on her left hand. (AR 142.)

When asked to describe how her bipolar disorder prevented her from performing a full-time job, Sloniker replied that in many of her past jobs, she had issues or disagreements with her supervisors. (AR 154.) Sloniker also provided confusing testimony about her experience working at Wal-Mart. Among other things, she reported receiving several write-ups for tardiness, explaining that she was working two or three other jobs at once and failed to arrive at Wal-Mart on time. (AR 157.)

In terms of physical problems, Sloniker mentioned a lifelong condition with her hands that she described as "essential tremors." (AR 159.) She also testified that she had back problems, preventing her from bending and twisting. (AR 160.) Sloniker further claimed that a degenerative joint in her knee made bending her knee difficult. (AR 160.)

Finally, Sloniker testified that when she experienced pain due to fibromyalgia and stress attacks, she would also experience poor concentration and poor memory.[2] (AR 161.)

### III. The ALJ's Decision

The ALJ found that Sloniker met the insured status requirements of the statute through the date of his decision and had not engaged in substantial gainful activity since her alleged onset date, August 18, 2009. (AR 11-12.) At step two, the ALJ identified several impairments, including: fibromyalgia, lower back impairment, hip bursitis, obesity, bipolar disorder and depression. (AR 12.) At step three, the ALJ determined that Sloniker did not have an impairment, or combination of impairments, that met or equaled one found in the Listing of Impairments. (AR 12-15.)

Between steps three and four, the ALJ determined Sloniker's residual functional capacity ("RFC"), finding she could perform sedentary work that would limit her to occasional climbing, stooping, bending, crouching, crawling, or kneeling. (AR 15.) Due to moderate restrictions in social functioning, the ALJ limited Sloniker to occasional interactions with co-workers, supervisors, and the general public. (AR 15.) Because of Sloniker's moderate deficiencies in concentration, persistence, and pace, the ALJ also limited her to simple, routine, repetitive tasks that did not involve fast-paced production or frequent workplace changes.[3] (AR 15.) The ALJ also found that Sloniker was likely to

---

[2] Medical evidence from the record has been referred to in the Analysis Section of this opinion.
[3] The ALJ's RFC determination in the second decision is notably different to that in the first decision, which reflects the fact that the ALJ made more detailed findings with respect to Sloniker's medical impairments following the remand order. For instance, in the first decision, the ALJ merely stated that Sloniker was "precluded from more than occasional climbing, stooping, bending, crouching, crawling, and kneeling. She has a limited but satisfactory ability to maintain

be "off task" for about 5 percent of the workday. (AR 15.) She was likely to absent from work one day each month. (AR 15.) The ALJ found that Sloniker could not perform her past relevant work (AR 22), but that she could perform a number of sedentary jobs that existed in significant numbers in Wisconsin. (AR 23-24.)

## OPINION

A federal court reviews an administrative disability determination with deference and will uphold a denial of benefits unless the ALJ's decision is not supported by substantial evidence or is based on an error of law. 42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Where conflicting evidence allows reasonable minds to differ about whether a claimant is disabled, the responsibility for that decision falls on the [C]ommissioner, or the [C]ommissioner's designate, the ALJ." *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (citation omitted). Thus, a reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Here, Sloniker renews many of the arguments she made before the Appeals Council, principally challenging the ALJ's findings concerning the medical evidence and

---

attention and concentration; understand, remember, and carry out detailed instructions; demonstrate reliability in time and attendance; and complete a normal workday and workweek without interruptions from psychologically based symptoms or unreasonable rest periods." (AR 184.)

credibility. Because there is substantial evidence to overcome each of these arguments, there is nothing in Sloniker's briefing to persuade the court that remand is required.

## I. Medical Impairment Not Considered

Sloniker contends that the ALJ erred in failing to find that her sleep apnea constituted a severe impairment or resulted in disabling symptoms. Under the Social Security Act, 42 U.S.C. § 223(d)(3), an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." In addition, "[t]he mere presence of some impairment [in the medical records] is not disabling *per se*." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also Garmon v. Apfel*, 210 F.3d 374, at *4 (Table)(7th Cir. Mar. 22, 2000) (rejecting claimant's argument that he had severe impairment because he sought medical treatment for various symptoms).

Here, the ALJ expressly addressed the issue of Sloniker's sleep apnea impairment. In finding that the condition was non-severe, the ALJ expressly stated:

> Although the claimant has alleged that her sleep apnea is a severe impairment, there is little evidence in the record that this impairment limits her ability to perform basic work activity. Once the claimant pursued treatment for her sleep apnea, *she admitted that her fatigue had improved and that she was doing "quite well"* (Exs. 4F/l, 7F/5). In fact, she obtained such significant relief with treatment that her treating sleep specialist, Sushmt Patel, M.D. noted on September 23, 2009, that she has been *so successful with CPAP therapy that there is no need for any immediate follow-up appointment* and stated one should be scheduled in a year (Ex. lOF/1). The claimant alleged that her insomnia and sleeping problems worsened in August 2010 (Ex. 6E), however, there is no treatment to

>   support this allegation, nor does the claimant's representative
>   allege she has had any such treatment (Ex. 17E/3).

(AR 12 (emphasis added).)

In addition to the lack of evidence to support sleep apnea symptoms, the ALJ relied upon a report prepared by Frank J. Elmudesi, Ph.D. That report noted that Sloniker admitted she was staying up each night until 3:00 a.m. watching television or playing on the computer. (*Id.*) This suggested that entertainment distractions, rather than sleep impairment(s), were the primary problem for Sloniker's condition. In any event, a claimant's own statements alone *cannot* establish a severe impairment under the regulations. *See* 20 C.F.R. § 404.1508. Accordingly, the court can find no error in the ALJ's analysis of the severity of her sleep apnea.

## II. ALJ's Credibility Determinations

Sloniker's next challenge targets the ALJ's credibility findings, primarily with respect to Sloniker's *own* credibility. But because an ALJ is in the best position to determine a witness's truthfulness, a court will not readily overturn an ALJ's credibility determination unless it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (internal quotations omitted). This does not mean the court is abdicating its supervisory role, but a credibility determination will be affirmed as long as the ALJ gives specific reasons that are supported by the record for his finding. *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (credibility determinations rarely disturbed by a reviewing court); *Skarbeck v.*

*Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). Here, Sloniker has failed to call into question the ALJ's credibility findings.

Even a cursory review of the ALJ's decision reveals that the ALJ's findings were not boilerplate phrases, as Sloniker would have the court believe. Rather, the findings are based on internal inconsistencies in Sloniker's own evidence. This is perhaps best illustrated by the ALJ pointing out that although Sloniker claimed to become unable to work, she continued to exercise 20 to 30 minutes a day on an elliptical machine and completed her Master's Program in biblical studies. (AR 22.)

Even more telling is the fact that Sloniker remained employed on a part-time basis following her purported onset date, August 18, 2009. The ALJ emphasized this point by outlining her financial earnings in 2010-2011. (*Id*.) He then concluded that this evidence, coupled with Sloniker's admitted daily and educational activities, were enough to impact her credibility negatively, particularly when I came to her capacity to work. The ALJ's credibility findings are reinforced when viewed in the broader context of the medical evidence. (AR 20-22 (summarizing evidence from Drs. Callear, Lancaster, Donahoo, Rabinowitz, and Emudesi).) In the face of substantial evidence to the contrary, Sloniker's own lay assessments of her capacity to work carries little weight. *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)) (claimant "bears the burden of producing medical records showing her impairment").

Because the court can find no fault with the ALJ's analysis, the court must reject Sloniker's arguments despite her *pro se* status. *See Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("Although civil litigants who represent themselves ('*pro se*') benefit from

various procedural protections not otherwise afforded to the attorney-represented litigant . . ., *pro se* litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines.").

### III.   Vocational Testimony

Sloniker next contends that the ALJ failed to consider evidence from a vocational expert that supported her application for disability benefits. Specifically, Sloniker contends that vocational expert, Michelle Albers, proffered evidence indicating her restrictions would result in absenteeism 3-5 days a month. (Pl.'s Reply Br. (dkt. #16) 4.) The problem with this evidence -- as the ALJ correctly noted -- was that Ms. Albers's report was predicated on Dr. Murdy's medical opinion, which the ALJ afforded "little weight" because (1) it was internally inconsistent, and (2) Dr. Murdy's specialization was in internal medicine -- not rheumatology or orthopedic medicine, which the ALJ reasonably viewed as fields more relevant to Sloniker's purported fibromyalgia impairment. Consequently, Ms. Albers vocational report was also afforded little weight by the ALJ based as it was on a medical opinion that had already been heavily discounted. The court can find no error with this analysis.

### IV.   Onset Date

In her reply brief, Sloniker argues that the ALJ committed legal error by failing to "determine the onset date" for each of her impairments. She relies on Social Security Ruling 83-20 ("SSR 83-20") and case law interpreting that ruling. (Pl.'s Reply Br. (dkt. #16) 11-13.) Given that this argument was raised for the first time in reply briefing, the

court afforded the Commissioner an opportunity to file supplemental briefing on the following issues: (1) whether the present onset date (August 18, 2009) is enough to cover all of the relevant impairments indicated in the ALJ's decision; (2) if not, whether this constitutes error, requiring remand for further factual development; and (3) whether the court should remand the onset issue before addressing the other issues in Sloniker's briefing.

Upon review of the Commissioner' briefing, the court finds no reason to remand with respect to purported deficiencies in the ALJ's onset date determination.  First, as pointed out by the Commissioner, Sloniker's work history reveals that she worked steadily from 2000 through 2009 and that she made over $35,000 despite working only eight months in 2009.  This provides substantial evidence upon which to base the ALJ's decision regarding a *single* onset date.  Regardless of the deference afforded to ALJ decision, there is no reason to disturb this finding. *See Richardson*, 402 U.S. at 401(Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.")  The Commissioner also addresses why the authorities cited in Sloniker's reply brief are inapposite to the facts in this record.  *See, e.g., Dhanraj v. Barnhart*, 2006 WL 1148105 (S.D.N.Y. 2006).  In that case, for example, the onset date was relevant because the claimant had to demonstrate disability prior to his/her date last insured. That is not an issue for Sloniker because the ALJ found her

insured through the date of the ALJ's decision.[4] (AR 11.) As such, Sloniker challenge to the ALJ's onset date finding lacks merit.

## V. Miscellaneous Issues

Finally, Sloniker's briefing presents many other miscellaneous arguments, many of which alternate between challenges to specific findings and general complaints (some of which have been already addressed above). These arguments can be addressed in more summary fashion. First, Sloniker asserts that the ALJ failed to include all of Dr. Murdy's limitations in the RFC determination. She argues that this constitutes error, citing Ninth Circuit authorities. Notwithstanding the fact that the law cited is from sister circuits, Dr. Murdy's evidence was afforded little weight by the ALJ. This has been addressed earlier.

What is more, the ALJ relied on other medical opinions to bolster the RFC determination. (AR 22.) Because there are no gaps in the ALJ's analysis, there is no need to remand or reverse. The court finds as much since there is nothing in the record to bring into question the ALJ's reliance on Sloniker's medical history and medical source statements. *See generally* SSR 96–8p; *see also* 20 C.F.R. § 404.1545(a)(1).

Second, regarding her allegations of discrimination based on age, Sloniker's general allegations are insufficient to undercut the ALJ's ultimate decision that she is not

---

[4] Similarly, *Plumley v. Astrue*, 2010 WL 520271 (D.Vt. 2010), is not relevant because it describes a claimant and a situation that is very different from Sloniker's case. *Plumley* concerns a claimant with an alleged disability onset date preceding her 22nd birthday, who filed an application for Child's Insurance Benefits and who had already been found disabled under another title of the Social Security Act. The court noted that but for the period postdating *Plumley's* 22nd birthday, SSR 83-20 required the ALJ to determine the onset date of disability. *Plumley* at *5. Sloniker did not apply before reaching her 22nd birthday, did not apply for Child's benefits, and the agency has *never* found her disabled.

disabled.  A district court solely evaluates an ALJ decision for errors in law, or a lack of substantial evidence to support the findings of fact.  Nowhere is there a mandate under 42 U.S.C. § 405(g) to look to the ALJ's subjective motives in reaching a particular result, especially when there is no evidence that would lead the court to believe that the plaintiff's age was a factor in the ALJ's decision.

Third, and finally, Sloniker points to her history of serious depression and other mental health issues, including her most recent hospitalization in 2010, but does not argue that the ALJ failed to consider its impact on her employability, nor fault the ALJ for finding evidence that she could perform sedentary work on an ongoing basis, given that she no longer requires treatment for these limitations.[5]

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is **AFFIRMED**, and that plaintiff Marilyn Sloniker's appeal is **DISMISSED**.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 5th day of February, 2014.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

---

[5] Of course, if her mental issues worsened or regularly interrupted her capacity to function on a daily basis, Sloniker may want to reapply for a disability determination.